Proceed to the day calendar. Our first case is United States of America v. Chris Cain. Good morning, Your Honor. This is an interesting case. It really comes in two parts. The first part we have to talk about is the question of whether my client was denied due process by the court and by the U.S. Attorney's Office. And then the second part, assuming there's due process, is perhaps more complicated to try to figure out an appropriate remedy. It seems to me that it's quite clear that there was a failure of due process. We have a situation where it's almost five years from the time this court sent back the case and even then, it was a long time before the mandate issued, before he was finally re-sentenced. He was re-sentenced at that point, as I'm sure the Court's aware, to 144 months, which he had served by the time he . . . A hundred and twenty months of that was a mandatory consecutive sentence. That's right, Your Honor. And I think his actual time served was like 144 months and aggressive in getting this thing set. It's hard to criticize the court system, but this is not the high day of court procedure and administration. The U.S. Attorney's Office also would say it's not a high day. At one point, they said, we'll just let it sit. This is the situation . . . I'm sure the Court's aware . . . reversed the convictions on the racketeering and sent it back. And then, the U.S. Attorney's Office, I don't know what happened. They didn't know what to do with it. They didn't want to make a decision. They figured that my client was in jail. It wasn't going to make any difference. He had a long sentence. We'll just let it sit and see what happens. And then, all of a sudden, when the time comes, they dismiss the charges. Well, it's fair to say that they thought they already had a 235-month sentence on one of the counts, together with a 120-month sentence, which was to be consecutive, on one of the remaining convictions that was still valid. So then, from their perspective, what they're suggesting is, we didn't think this was a big deal because, essentially, the same sentence would be imposed again. But just visualize the defendant at this point. He's facing a new trial on various serious counts. And he, as hard as he works to try and get this brought before him. And I've never seen a pro se do as many, try to get this thing brought forth as such. You mean, in Vermont, we work a little faster than that, Mr. Langrock? Sometimes we do, and sometimes we don't, Your Honor. I'm sorry. I didn't mean to distract you. Mr. Langrock and I are from the same hometown. We have practiced law against each other for many years, before he took the silk. I'll give you an extra 30 seconds. He did try to deal with this. He's in prison. He's facing trial. The anxiety for him to do that, the preparation, what have you, it's not appropriate for the U.S. Attorney's Office to say, well, he's going to serve a sentence anyway. Why should we be in a hurry? Well, particularly, as it turned out, he didn't get the 235-month sentence on resentencing. And one could certainly argue, I guess you are arguing, that the government shouldn't just assume that somebody's going to get a long sentence. It's like assuming he's probably guilty anyway. He's going to be found guilty, so why do we need a speedy trial? He's going to get a really long sentence, so why do we need to rush to adjudicate what a sentence is going to be, is really what the argument is. I couldn't have made a better argument myself, Your Honor. And I agree totally. I mean, in another case... And I get, by the way, if the government had come back at the end of this period and said, you know what, we're not really satisfied. We want to go after him and retry the Rigo case, that you would have had a very good argument that it should be dismissed, and even dismissed with prejudice. Because of the delay. Because of the delay. But, of course, then they come back and instead they dismissed those charges, and then we proceeded to sentence. And what you're asking us to do is to vacate his convictions for crimes that there's no question he committed, he was found guilty of by a jury fairly, and he received a very substantial sentence, which he served. So I'm having trouble understanding why that would be an appropriate remedy to just wash the slate clean for him at this point. Well, if we get past the due process, and let's assume that for a minute, then it comes to remedies. In the Betterman v. Montana case, the Court says, why should a defendant get a windfall, an unjustified windfall? I suggest to you, why should the government get a windfall? I mean, it always goes one way. Well, it's not a windfall. The government, I don't even like to put it this way, because it's not the government's win, it's justice's win, but the government earned its conviction. Mr. Cain was found guilty of these things. That conviction was affirmed. He was sentenced for it, and served a lengthy period in prison, which is the sentence that the judge decided even retroactively was appropriate. So what do we, I mean, there may be, you know, I'm interested in thinking about what kind of remedy should there be, but it's hard for me to see why it should be that he walks out the door with a clean record somehow. Well, Your Honor, I've spent a lot of time thinking about the remedy in this situation. And let's start with the thing that there should be some remedy. The situation was such that his rights were violated. It should not, the government should not be able to do this without some functioning penalty. Otherwise, in future cases, they can simply say, we'll just let it sit because it's a big sentence. That's wrong, and we should tell them it's wrong. How do we do it? We can suspend the rest of the sentence. We can say that the one- The supervised release that he still has to serve. Yeah. Is that enough? There are cases which say that when there's enough of a violation, the only way to bring it back is to have those. Now, I agree with you that it's an earning. I mean, it's a matter of right. Whether, my client has always claimed innocence, but that's unimportant. He was convicted. There is some benefit to the public of continuing him on supervised release. I mean, he was found guilty of very serious crimes, and it would be nice to be able to have some supervision of him to make sure that, I know the record shows he rehabilitated while in prison, but still. Had they not done this, he would have been out on halfway house, been out earlier, the situation. Isn't that speculative? I guess my real question is one of prejudice, right? That's the second prong on the due process. Right. You have to show prejudice. It seems to me the significant violation was really from December of 2012 for 21 months thereafter until eventually he had a lawyer. That 21 month period is a problem, but then I start looking at the question of prejudice for that 21 month period, and the fact is, he was convicted of a 10 year mandatory minimum, and that hadn't even been completed by the 21 months later. As a result, frankly, he would never have been released during any of that period of time. Ultimately, you get into a question of very shorter periods of time, and is it really prejudicial to him? It's only prejudicial if you can speculate that Judge Arcaro would have given him a little less than 144 months. Isn't that really all speculative? Two responses. One, speculation. If you ask the man in the street, he got time served, it couldn't go the other way. There's a real shot at it, and given the way that was said, there's a real shot at it. The other prejudice is that the court used the RICO material to up the criminal category, and he lost the opportunity to prepare for that in the situation, to respond to that as effectively as he might. The delay really hurt that. I don't see how that's the case. He had a lawyer, and he had more time than he should have had, in a sense. You're arguing he should have had less time to prepare for this, but it was known long before his sentencing that the RICO count would not be retried. It would be obvious to any lawyer that the government would argue to the court that, well, Judge, you heard this evidence. This should all go into the maw in deciding what the sentence should be. So how does the delay in the sentencing prejudice his preparation? You're giving more credit to the lawyers than I might, Your Honor, that all lawyers might not have thought that. They might have thought when the cases were dismissed that that would be off-bounds, and the fact that the amount of the timing did delay the ability for him and for his counsel to prepare for it appropriately. They didn't know the game plan, and it presented a problem for them. I hear you in all the arguments that this is not an easy case to deal with. It seems to me, in summary, I see that my time is over, but the government, in letting this case sit, was wrong. The courts, in not bringing this back, were wrong, and some remedy should be fashioned, whether it be a token or a serious remedy of vacating the convictions. In the real world, it's not going to make it. My client's out doing well. He's fine, and really, most cases I'm here arguing have real consequences in terms of life, otherwise, for my client. This really is a matter of what it's going to do in terms of saying something, making a statement about what happened here, and that's what I think. Thank you, Mr. Langrock. You've got a couple of minutes left for rebuttal. We'll hear from you again at that time. Mr. Karaszewski. May it please the Court, my name is Joseph Karaszewski. I represent the United States on this appeal. Mr. Cain has a heavy burden to prove a due process violation in this case, a burden which he has not met. As Judge Sessions, as you noted, there must be prejudice. There must be a showing of prejudice for Mr. Cain to show a due process or to prove. Prejudice is just part of the test. It's who's responsible for this. Can you say he's responsible for any of this, any of the five years, almost five year time from this Court's decision to the time he was actually sentenced? I don't know that he's responsible for any of it, but there's enough responsibility to go around to various areas. How about going around to him? What did he do? He kept filing motions, filed two mandamus petitions in this Court. He said, I want to be sentenced. I want to be sentenced. What more could he have done? Well, the question is not exactly to say, okay, who's responsible for it, because in some instances, nobody was responsible for it because things were going on in the Court. Well, in some instances, somebody was responsible for it. The government actually said to the judge at one point, well, you know, we weren't sure what to do, so we figured let's just let it sit and see what happens. Now, if that isn't a statement, an overt statement of callous disregard of somebody who is saying, if you're going to retry me, retry me, who's asking for a speedy trial, and the government is telling the Court, well, for 20 months, we just shrugged it off because we didn't care because it wasn't going to hurt us if he sat there in jail wondering if he's going to go to trial, and maybe we'd figure out something. Maybe we'd decide to try him anyway at the end of the day. And I must admit I'm a little disturbed that the government's brief to this Court is, shall we say, unapologetic. There is nothing that I see, you know, when Mr. Langrock says send the government a message, there's nothing that I see that suggests that the government, your office, doesn't need a message based on the way this case was conducted and then the way it was defended. Your Honor, I can say, and if the Court doesn't feel that there was, we were apologetic at all for any of the period of time, that's not the case. I would say it would be difficult for me to find a reason in the period when Mr. Cain asked for counsel in January of 2013 and the time that he filed his motion in March of 2014. There was about a 14-month period of time. Things were going on, yes, the motion for or the request for counsel was misfiled by the District Court. It went in Mr. David Cain's case, so it got lost a little bit there. I appreciate that, but, Your Honor, I assure you that we're not being callous about circumstances where we should have moved quicker and I do appreciate that. It is the government's responsibility. Judges are busy, they lose track of cases. It shouldn't happen, but it does. In a criminal case, maybe I'm influenced by the fact that I came up as a young prosecutor in the early days of the Speedy Trial Act when the Speedy Trial Act was actually taken somewhat seriously. We were trained that it was our job to make sure that we didn't get cases into a situation where somebody had a speedy trial claim. It seems to me that that is a training that needs to be restored a little bit because it shouldn't be . . . if the court isn't acting on motions, and particularly in a case where there's a pro se defendant who is actually . . . I mean, he's doing stuff to vindicate his rights, but maybe not the most effective things or maybe not what a lawyer would have done on his behalf. It seems to me it behooves the government to poke the court with a stick a little bit. Yes, and, Your Honor, my office does appreciate that. Certainly, with the Decano decision that came out concerning the constitutional right to a speedy trial, certainly we've redoubled our efforts to make sure that those things are treated in a much more expeditious fashion. When you break down the time periods, though, you're essentially talking about a 21-month period, right, between December of 2012 and then 21 months after, before the defendant got a lawyer. That seems to be the bulk of the problem. From that point forward, it seems to be one small error after another. All of a sudden, the lawyer can't practice in the United States. Then he gets another lawyer. Then the other lawyer has a conflict. As a result, they have to get another lawyer. As a result, then they're into preparation and significant sentencing hearings. It's really the 21-month period. I'm interested to know whether you respond to Judge Lentz's comment that any of this delay was intentional on the part of the government or just merely neglectful. Well, I would say, and I think you're correct, Judge, that the cases do say that you consider the reasons for the delay, not necessarily, okay, who's responsible for the delay. And I think your point is, I agree with you, Judge, that a good portion of it, there were reasons for the delay, reasons related to counsel, reasons in this court after this court issued its decision where there was dealing with motions for rehearing of the other defendants. So there were good reasons for those periods of delay. When you're talking about that period, though, Judge, the thing to look at, and whether it was neglectful on the part of the government, I would probably be pretty hard-pressed to say that it wasn't in some way, whether the government gained any tactical advantage from that. And certainly there's nothing in this record to say that the government gained any tactical advantage. As you say, when we started aggressively litigating the parameters of the resentencing, there's no indication in this record that Mr. Cain was not able to make any arguments that he could have made at any time after the case came back down from this court. And you look at it, and the government and his counsel did a great job in staving off the government's argument that the sentence should be the same. There's still that mail fraud in place that carried with it a 235-month sentence. The government... I'd like to ask you a question about the process here. Cases taken on appeal, the RICO counts are reversed. The case is sent back to the district court, and I think there's a requirement of resentencing. In fact, is that correct? I mean, you essentially reverse on the RICO. You don't reverse on the other three counts. Those convictions stand. The circuit, I think, suggested that you have to resentence, despite the fact that there was no removal of that conviction. Is that procedurally correct? I'm not to say, and this court's mandate said, retry on the RICO counts if the government chooses to pursue them and to resentence on the remaining counts. So you're absolutely correct, Judge. A resentencing was required. However, the government's position was it's not going to be... the resentencing is not going to be that complicated. There's still that 235-month, which put together with the 120-month mandatory on the arson count. That was all part of the mix still, and the government's position was the same sentence should be imposed here. So I'm not saying that he had no right to be resentencing. What I'm saying is that under the circumstances of this remand and what was still remaining and what the government chose not to pursue, the same sentence certainly was a possibility and was the sentence that the government was advocating for. And in the end... Is it correct that at the end of the day... I mean, he was not resentenced to time served, right? Correct. He was resentenced to 144 months. 144 months. And in fact, while it may be a relatively small amount, is it not the case that he served more time than would have been appropriate on a 144-month sentence? I think Mr. Langrock referred to 144 months and 8 days, but wouldn't he have been entitled to good time credit that would have reduced his actual release date below 144 months by approximately 15 percent? If he were resentenced to 144 months back? If he had been sentenced to 144 months two years earlier, would he not have served a year or less than 144 months? Well, certainly that's up. I suppose it depends on when he was resentenced. Yes. And I think when you look... Well, I'm not conversant exactly with how... If he had received a 144-month sentence from day one, he surely would have served less than he actually served. From day one, meaning he was sentenced for 144 months after his first trial and there was no appeal or no reversal, a 144-month sentence from that date would have led to less than 144 months of service. I think that's correct, Your Honor, in terms of the way that the Bureau of Prisons... That is correct. I thought the calculation of 140 months made by Judge O'Carra was essentially including the good time that he would receive, the 15 percent plus the 10 percent. Yes, I'm not sure because Mr. Langrock said he actually served 144 months and 8 days. I don't know if that's accurate. I'm sorry. And, Judge, thank you for reminding me of that. Yes, I do believe that when Mr. Cain's attorney went through the calculations, he said, look, Judge, he would get this much good time, he would get 56 or 57 days, whatever it is, per year of good time. I do believe that the record bears it out that the attorney actually did all those calculations and said 144 months is what he served, or approximately. Part of that time could have been in a halfway house, though. That's one thing. That is true. He forfeited probably. That is true that some of that time could have been in a halfway house if it was appropriate for him to be released, which he appears to have rehabilitated fairly well in prison. But I think, and I see my time is up, but just to say I think that the prejudice and I, Mr. Cain's argument now that it's almost certain that he would have been sentenced to less time is purely speculative. And he has not shown prejudice. There were reasons for a good amount of the delay that occurred between the decision from this court remanding and the resentencing. And for those reasons, this court should affirm the judgment of the district court. Thank you, Mr. Kuczynski. Mr. Langerach, do you have a couple of minutes? I think the government's right that the sentence would have been 15% was included. I think he actually served from 2006 to 2016. But there were eight days and there was also a halfway house that he was deprived of. Unless the court, I think the court understands our position. Thank you very much. Mr. Langerach. We'll reserve decision.